Dear Secretary McDaniel:
You have requested an opinion of this Office regarding the legal authority of various agencies of government to dispose of abandoned vessels left behind by Hurricanes Katrina and Rita. Specifically, you ask whether the Louisiana Department of Environmental Quality ("DEQ") has the authority to remove and properly dispose of vessels left abandoned or destroyed by the 2005 hurricane season when such vessels either remain on public rights of way or public property or pose a threat to public safety under La.R.S. 34:843 or other applicable State or federal law. Additionally, you have asked this Office to advise you on the proper procedure to be followed for the removal and disposal of such vessels. Based on the following analysis of both State and federal law, we opine that DEQ, under the specific circumstances herein, does have the authority to remove and dispose of abandoned vessels. This authority derives from several sources, as are discussed in more detail, infra, including: (1) the Louisiana Homeland Security and Emergency Assistance and Disaster Act; and (2) Act Number 662 of the 2006 Regular Session of the Louisiana Legislature.
Background
The pertinent factual background accompanying your request states that subsequent to Hurricanes Katrina and Rita in 2005, DEQ participated in several emergency meetings to discuss, among other things, the environmental concerns posed by vessels on public and private property. Due to DEQ's technical expertise and its availability of resources, DEQ was tasked with and agreed to handle management of the contracts for vessel removal and disposal. Funding for this process was to be provided by the Federal Emergency Management Agency through the Governor's Office of Homeland Security and Emergency Assistance and Preparedness ("GOHSEP"). *Page 2 
Louisiana Law Under a State of Emergency, Generally
Before delving into the specific issues raised by your request, it is important to first discuss the unique situation created by the 2005 hurricane season, and Louisiana's ensuing response. Hurricanes Katrina and Rita wrought havoc on Louisiana's coastal parishes. The levee systems protecting the residential communities in these parishes were overwhelmed and inundated. Hurricane Katrina made landfall on the Louisiana coast on the morning of August 29, 2005, as a Category 3 hurricane, with sustained winds of 125 mph (205 km/h) near Buras-Triumph, Louisiana.[1]
Approximately one month after Hurricane Katrina, Hurricane Rita made landfall on September 24, 2005, near the Texas-Louisiana border as a Category 3 hurricane.
Pursuant to State of Louisiana Proclamation Nos. 48 KBB 2005 and 53 KBB 2005, Governor Kathleen B. Blanco declared states of emergency in Louisiana as a result of these storms. The purpose of these proclamations was to first give governmental authorities time to prepare for the hurricanes, and in the aftermath of the storms, to allow them ample opportunity to address the damage and destruction caused by Hurricanes Katrina and Rita.[2]
It is important to note that under Louisiana's Homeland Security and Emergency Assistance and Disaster Act, La.R.S. 29:721, et seq
(hereinafter sometimes referred to as the "Disaster Act"), upon a declaration of an emergency or disaster by the Governor the State's emergency response and recovery program under the command of the director of GOHSEP is activated. La.R.S. 29:724. Simply put, once the Governor declares a state of emergency the provisions of the Disaster Act go into effect and remain in effect until such time that the state of emergency is terminated. Thus, for purposes of this opinion, since the state of emergency has been extended until March 19, 2007, the provisions in the Disaster Act and the powers and duties of the Governor and GOHSEP must be analyzed in conjunction with other relevant State and federal laws. *Page 3 
Jurisdiction and Authority Over Unclaimed, Abandoned/Grounded Vessels
A. The Disaster Act
There are several provisions of Louisiana's Disaster Act that are applicable to the determination of whether DEQ has the authority to remove and dispose of abandoned and wrecked vessels. As a starting point, upon the declaration of a state of emergency, the Act provides the Governor with several powers that enable her to "[meet] the dangers to the State and people presented by emergencies or disasters." La.R.S.29:724(A). Indeed, the stated purpose of the Act, as outlined in subsection 722, is to ensure that the State is in a position to "respond to, or recover from these events, and generally preserve the lives and property of the people. . ." As applied to this specific situation, the Governor is given the authority to "utilize all available resources of the State government" and to "transfer the direction, personnel, or functions of State departments and agencies or units thereof for the purpose of performing or facilitating emergency services." La.R.S. 27:724(D). Thus, even if DEQ does not have the authority absent an emergency to dispose of abandoned vessels, the Governor is authorized to transfer that authority to DEQ if she determines that such a transfer is necessary to promote the recovery of the State.
Furthermore, the director of GOHSEP is also authorized to coordinate the activities of all State agencies and organizations and otherwise cooperate with agencies and organizations of other states and of the federal government. La.R.S. 29:725. In fact, the chain of command created by the Disaster Act places the director of GOHSEP directly under the direction and control of the Governor and requires that all State agencies and departments comply with the directives from GOHSEP relating to emergency planning and operations. Id.
Consequently, DEQ first acquired the authority to act as the agency responsible for the removal and disposal of abandoned and wrecked vessels when GOHSEP tasked it to handle the management of such activities. As verification of this assignment, attached to your opinion request is a letter from GOHSEP to DEQ Secretary Mike McDaniel, dated February 2, 2007, which states, in pertinent part:
 This is to confirm that, in the aftermath of these two catastrophic events, the Louisiana Department of Environmental Quality (LDEQ) was designated as the state agency having jurisdiction and authority for removal and disposal of all unclaimed, abandoned vehicles and unclaimed, abandoned/grounded vessels, whether situated on private or public property, as a result of one or both hurricanes. This designation was made pursuant to the provisions of La.R.S. 29:721, et seq.
Thus, this Office is of the opinion that the Disaster Act, along with the above referenced letter, provide support for the conclusion that DEQ possesses the legal authority to remove and dispose of all unclaimed and abandoned vessels remaining on private or public property as a result of the 2005 hurricane season. *Page 4 
B. Act No. 662 of 2006 Regular Session and DEQ's Debris Mission
The Disaster Act is not the only Louisiana law lending support for DEQ's authority over abandoned hurricane damaged vessels. In September of 2005, DEQ prepared a Hurricane Katrina Debris Management Plan.[3]
Additionally, during the 2006 Regular Session of the Louisiana Legislature, Act 662 was passed. This Act tasked DEQ with the development and implementation of a comprehensive debris management plan (hereinafter sometimes referred to as the "debris mission"). The purpose of such a plan was the facilitation of a "reasonable, efficient, and prompt recovery from natural disasters that will be protective of human health and the environment." La.R.S. 30:2413.1, as enacted by Act No. 662 of the 2006 Regular Session of the Louisiana Legislature. It also important to note that Act 662 required that the plan be consistent with State and federal law and not supercede any ordinance adopted by a local governing authority. Id. DEQ utilized portions of its 2005 Debris Management Plan in conjunction with the dictates of Act 662 to create the "Comprehensive Plan For Disaster Clean-up and Debris Management.[4]
Because this plan was mandated by the Louisiana Legislature, DEQ's authority to respond to clean-up of hurricane debris, including the removal and disposal of abandoned vessels, is fully supported by the laws of this State. In fact, the letter from GOHSEP confirming DEQ's authority states, "[i]n addition, LDEQ's jurisdiction was recognized as part of the agency's hurricane debris mission." The letter goes on to state that:
 This designation and authorization were made in full consultation and agreement with other agencies and offices of affected state and federal government, including the Governor's Office of Homeland Security and Emergency Preparedness, the Louisiana Department of Justice, the Louisiana Department of Transportation and Development, the Louisiana Department of Public Safety, the Louisiana Department of Wildlife and Fisheries, the Louisiana Recovery Authority, the United States Coast Guard, and the Federal Emergency Management Agency. All federal, state, and local debris mission partners were asked to provide assistance, cooperation, and consultation to the LDEQ consistent with their mandates/authorities/jurisdictions and LDEQ was to continue to coordinate with its federal, state, and local government partners.
See GOHSEP letter dated February 2, 2007.[5] Therefore, as to the question of whether DEQ has the legal authority to remove and dispose of abandoned hurricane damaged vessels, the answer is in the affirmative and is supported by Louisiana law under both Title 29 and Act 662. It is important to note that DEQ continues to be responsible for *Page 5 
cooperating and coordinating its recovery activities with all other federal, state, and local debris mission partners. The question of whether that has properly been done is a factual one, outside the scope of this opinion.
Proper Procedure for the Removal and Disposal of Abandoned Vessels
The determination of whether DEQ has the authority to dispose of abandoned vessels and the proper procedure to be followed for such disposal is important because FEMA requires strict adherence with local, state, and federal laws in order to secure reimbursement for expenses.[6]
Thus, because you stated in your request that funding for the management of vessels would be provided by FEMA, it is prudent that DEQ remain in compliance with all laws during the process.
The logical place to begin this analysis is to look to federal law to ensure that there is no law that either governs the procedure for the handling of abandoned vessels or specifically preempts State and local laws. According to the Wreck Act, 33 U.S.C. 409, the owner of a vessel is responsible for the removal of a sunken vessel. More specifically, the Act makes it unlawful to:
 [s]ink, or permit or cause to be sunk, vessels or other craft in navigable channels. . . in such a manner as to obstruct, impede, or endanger navigation. . . and it shall be the duty of the owner, lessee, or operator of such sunken craft to commence the immediate removal. . . and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States. . .
33 U.S.C. 409. Despite the reference to the United States being responsible for the removal of abandoned vessels, upon the failure of the owner to so remove, jurisprudence has interpreted this section to allow the application of State or local wreck laws so long as they do not conflict with existing federal admiralty law. Askew v. AmericanWaterways Operators, Inc., 411 U.S. 325 (1973). Furthermore, because both the Louisiana Disaster Act and Act 662 require DEQ to coordinate and cooperate with other federal, state, and local agencies, safeguards exist to ensure that DEQ remains in compliance with federal law during the removal and disposal process.
Having thus determined that federal law does not prohibit the State from establishing a procedure for the proper removal of abandoned vessels, we now turn to an analysis of Louisiana law. Louisiana Revised Statute 34:843 provides for the removal and other disposition of abandoned vessels by the "federal, state, or local governing authority having jurisdiction thereof." Because this Office has opined that DEQ possesses the authority and jurisdiction over the removal and disposition of abandoned vessels, we now address the procedure DEQ must follow during such process. *Page 6 
La.R.S. 34:843 provides for the proper procedure to be used when removing and disposing of abandoned vessels. The procedure is, generally, as follows:
 (1) DEQ is to provide written notice by certified mail to the title owner of the abandoned vessel and the owner is given thirty days within which to provide a plan for removal of the vessel.
 (2) If the title owner of the vessel cannot be identified, DEQ must publish in the official journal of the parish where the vessel is located a notice that the vessel will be removed and disposed of by DEQ after thirty days of publication.
 (3) If the owner provides DEQ with a plan for removal of the vessel within the thirty day time delay, DEQ must approve or reject the plan within thirty days of submission.
 (4) If a plan of removal is not presented to DEQ, or is rejected, then DEQ may remove and dispose of the vessel, or sell, exchange, or otherwise transfer ownership of the vessel to any person, corporation, or entity for any price or consideration that DEQ deems reasonable.
 (5) If the vessel poses an immediate threat to life or property, DEQ may remove and dispose of the object without waiting for the thirty day time delay to run.[7]
Simply put, regardless of the cause for the abandonment, wreck, or grounding of a vessel, the onus for removal of such vessel is placed on the owner under both federal and State law. This conclusion is further supported by laws governing documentation of vessels. According to federal law, all undocumented vessels[8] must have a number issued by a state, along with a certificate of number. 46 U.S.C. 12302-12304. The owner of a numbered vessel is then under a legal duty to notify the state of the destruction or abandonment of the vessel. Id. This requirement is also placed on the vessel owner by Louisiana law, which provides that the owner of a numbered vessel shall furnish the State with notice of the destruction or abandonment of the motorboat or sailboat. La.R.S. 34:851.20.
Thus, the proper procedure to follow during the removal and disposition of vessels abandoned or grounded in the aftermath of Hurricanes Katrina or Rita is that procedure outlined in La.R.S. 34:843. Once again, please note that DEQ must also remain in compliance with federal and local laws during such disposition; therefore, it is prudent that DEQ continue its mission with the cooperation of, and in consultation with, the appropriate federal, state, and local governments. *Page 7 
Conclusion
In conclusion, this Office is of the opinion that pursuant to the powers granted to the Governor and GOHSEP under the Louisiana Homeland Security and Emergency Assistance and Disaster Act as well as the debris mission developed by DEQ pursuant to the mandate of Act Number 662 of the 2006 Regular Session of the Louisiana Legislature, DEQ does possess the necessary legal authority to act as the agency responsible for the removal and disposition of vessels abandoned and grounded by the 2005 hurricane season. During the removal and disposition process, DEQ must follow the procedure outlined in La.R.S. 34:843. Specifically, DEQ must ensure that the registered owners of the vessels are notified of the existence of the abandoned vessel and must be provided with an opportunity to present a plan for the removal of the vessel. If no such plan is presented or if the vessel poses an immediate danger to life or property, DEQ have the vessel removed after timely notification to the owner, and may then dispose, sell, or exchange the vessel as stated in the statute.
We hope that this sufficiently answers your inquiry, however if we may be of further assistance please do not hesitate to contact our Office.
 Yours truly,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 By:___________
 Megan K. Terrell
 Assistant Attorney General
 CCF, Jr./MKT/tp
[1] Knabb, Richard D.; Rhome, Jamie R.; Brown, Daniel P. (December 20, 2005). Tropical Cyclone Report: Hurricane Katrina: 23-30 August 2005(http://www.nhc.noaa.gov/pdf/TCR-AL122005_Katrina.pdf). (PDF) NationalHurricane Center. Last visited on 03/05/2007.
[2] Proclamation No. 48 KBB 2005 was issued to respond to the threat of Hurricane Katrina and has been in effect since August 26, 2005. Furthermore, pursuant to State of Louisiana Proclamation No. 13 KBB 2007 the State of emergency has been extended through March 19, 2007. Proclamation No. 53 KBB 2005, which implements a State of emergency as a result of Hurricane Rita, has been in effect since September 20, 2005 and has been extended through March 19, 2007, in accordance with State of Louisiana Proclamation No. 12 KBB 2007.
[3] This plan was released on September 28, 2005, and revised on October 14, 2005.
[4] The latest revision of this plan occurred in August 2006. A copy of this plan can be found at http://www.deg.louisiana.gov/portal/portals/0/news/pdf/DEQDebrisPlan-8-25-FINAL.pdf. Site last visited on March 1, 2007.
[5] On file with the Louisiana Department of Justice.
[6] For a more detailed discussion of FEMA policies on reimbursement,see, La. Atty. Gen. Op. No. 05-0373.
[7] La.R.S. 34:843.
[8] Under federal law vessels engaged in a trade must be issued a certificate of documentation. 46 U.S.C. 12102. All other undocumented vessels equipped with propulsion machinery — most of the vessels being handled by DEQ would fall under this category — must have a number issued to it by the State in which the vessel is principally operated.46 U.S.C. 12301.